IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAMUEL HERON, III, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-16-862 |
| § | |
| EXXONMOBIL DISABILITY PLAN, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

This ERISA case challenges a plan administrator's denial of benefits under an employer-funded long-term disability plan. Samuel Heron, III sued the ExxonMobil Disability Plan, alleging that the decision to end his long-term disability benefits after an initial two-year period violated the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B). (Docket Entry No. 1). The Plan moved for summary judgment on the grounds that the plan administrator's decision was informed and reasonable, made after a careful investigation with the assistance of multiple independent third-party advisors, and is supported by substantial evidence. The Plan seeks a summary judgment that it did not abuse its discretion in denying Heron's long-term disability benefits. (Docket Entry No. 24). Based on the pleadings, the parties' arguments and submissions, the administrative record, and the applicable law, this court grants the Plan's motion for summary judgment. Final judgment is entered by separate order. The reasons for the ruling are explained below.

**I.    Background**

Samuel Heron, III is a 60-year-old man who suffers from a variety of illnesses, including diabetes, pancreatitis, Sjogren's Syndrome—an autoimmune-system disorder characterized by dry

1

eyes and dry mouth—and yawning seizures—seizures clinically manifested in part by yawns. (Docket Entry No. 23-4 at 647).

Heron began working in the procurement department at ExxonMobil in 1988, where he negotiated and managed worldwide material and services agreements. (Docket Entry No. 23-4 at 685). He was covered by the ExxonMobil Plan. Under the Plan, disability benefits are divided into two periods the first is "the period that begins on the last day the person was actively at work, and ends two years later." (§ 5.15; Docket 23-1 at 93–94). In this first period, an individual is incapacitated "if the person is wholly and continuously unable, by reason of a physical or mental health impairment, to perform any work suitable to the person's capabilities, training and experience, that the person's employer has available during the initial period, and such inability to perform work is expected to continue for . . . at least six months from the date the person's ability to perform work is determined." (§§ 5.13(A), 5.13(C); Docket Entry No. 23-1 at 92–93). After the initial two-year period, an individual is incapacitated "if the person is wholly and continuously unable, by reason of a physical or mental health impairment, to perform any work for compensation or profit for which the person is or may become reasonably fitted by education, training or experience, and such inability to perform work is expected to continue for . . . at least six months from the date the person's ability to perform work is determined." (§§ 5.13(B), 5.13(C), Docket Entry No. 23-1 at 92–93). In the initial period, the definition of incapacitated looks only to the ability to perform jobs available at the individual's current employer. After the initial period, the definition looks to the ability to perform any work that the person can do or reasonably could do with training.

Heron's last day of work at ExxonMobil was September 28, 2012. (Docket Entry No. 23-4 at 678). He was granted disability benefits for the initial two-year period under the Plan. (Docket

2

Entry No. 1 at ¶ 27; Docket Entry No. 23-4 at 719–21). In January 2013, an ExxonMobil physician, Dr. Eugenia George, recommended that Heron's "work hours [be] limited to a maximum of four (4) hours per day." (Docket Entry No. at 23-4 at 658). Dr. George met with Heron in February 2013 and recommended medical retirement from ExxonMobil. (Docket Entry No. 23-4 at 657).

The ExxonMobil Disability Plan documents, ExxonMobil Benefit Plans Common Provisions and the Summary Plan Description govern. (Docket Entry No. 23-1 at 69–97, 99–164, 166–196). There are two entities responsible for Plan administration: the Third-Party Claims Administrator, the Life Insurance Company of North America, LINA, a CIGNA subsidiary, is responsible for reviewing claims and determining benefit amounts for long-term disability benefits, (Docket Entry No. 23-1 at 187); and the Administrator-Benefits, Exxon Mobil Corporation, is "vested with full and final discretionary authority to determine eligibility for benefits, to construe and interpret the terms of the core benefit plans in their application to any participant or beneficiary, and to decide any and all appeals relating to claims by participants or beneficiaries." (§ 2.1(B)(1); Docket Entry No. at 23-1 122–123).

Near the end of the first two years and periodically thereafter, LINA conducts a benefits-continuation test. If LINA determines that the beneficiary no longer meets the Plan definition of incapacitated, the benefits are discontinued. (Docket Entry No. 23-1 at 179). LINA began reviewing Heron's case in April 2014, requesting medical records, an Estimated Physical Abilities Assessment, and a Follow-Up Medical Request Form from three of Heron's doctors: Dr. Joel Nachimson; Dr. Nadim Zacca; and Dr. Vivian Rodriguez. The doctors provided medical records. Dr. Zacca completed neither of the requested forms, Dr. Nachimson completed only the Follow-Up Medical Request Form, and Dr. Rodriguez completed both forms. LINA used this information to perform a Transferable Skills Analysis. Based on the review and the results, LINA concluded that,

3

given his current medical limitations, Heron could perform the occupations of an Import-Export Agent or a Management Analyst. (Docket Entry No. 23-1 at 62–64).

Dr. Rodriguez's forms indicated that Heron was able to return to work for four hours per day. Dr. Rodriguez noted that Heron's medical condition limited him to nonstressful jobs with no traveling, lifting, pushing, or pulling required. She answered "yes" to the question, "do you expect functional deficits to prevent your patient from performing essential job functions?" In response to the question, "what is your best estimate of when your patient can return to work," she answered, "unable to return" because of "chronic pain at epigastric area and prone [to] recurrent pancreatitis." On the Physical Abilities Assessment, Dr. Rodriguez noted that Heron was able to tolerate sitting, standing, and walking during the work day, each for up to 2.5 hours, or one-third of the work day. (Docket Entry No. 23-4 at 597–98).

Dr. Nachimson also stated that he expected "functional deficits to prevent [Heron] from performing essential job functions." He answered "yes" to the question, "could your patient return to work at this time if accommodations were made for the listed restrictions?" (Docket Entry No. 23-4 at 602).

After reviewing Heron's medical records and the forms received from Drs. Nachimson and Rodriguez, LINA determined that the "medical information received does not support functional limitations that would prevent [Heron] from performing the duties of any occupation." (Docket Entry No. 23-1 at 63–64). LINA denied the continuation of long-term disability benefits.

In November 2014, Heron submitted his request for additional review to LINA. Heron informed LINA that he was suffering from "abdominal diabetic neuropathy pains [] so intense that [he] cannot sit in a ninety-degree position for a prolonged period of time," and that he was having "feelings of extreme physical tiredness and frustration." Heron supplied over ten exhibits from

4

various doctors involved in his care. (Docket Entry No. 23-1 at 208–12).

LINA engaged Dr. Michael Perkins to perform an independent medical examination and produce a report. During this in-person examination, Heron "experience[d] constant right lower quadrant pain and right back pain," "numbness of both legs" and "blurred vision." Heron told Dr. Perkins that he walked three to four miles a day and attended football games, but also that spent "most of the day lying on the couch sleeping." Dr. Perkins concluded that Heron "is physically functionally impaired" and that "work activity restrictions are medically necessary." In response to a question asking what activities Heron could tolerate "[t]hroughout an 8-hour workday, to the extent that positional changes are necessary, with rest breaks and meal breaks at appropriate intervals," Dr. Perkins noted that Heron could sit for over 5.5 hours per day and could walk or stand for between 2.5 and 5.5 hours per day. (Docket Entry No. 23-1 at 40–52).

In a letter dated March 6, 2015, LINA affirmed its decision to deny Heron continued long-term disability benefits stating: "We do not dispute you may have been somewhat limited or restricted due to your subsequent diagnoses and treatment; however, an explanation of your functionality and how your functional capacity continuously prevented you from performing the essential duties of any occupation from September 29, 2014 through the present and beyond was not clinically supported." The letter told Heron that his next avenue was to appeal to ExxonMobil, the Plan Administrator-Benefits within 30 days. (Docket Entry No. 23-1 at 30–32). He did so in March 2015. (Docket Entry No. 23-1 at 287).

ExxonMobil hired a third party, MM Solutions, to independently review LINA's benefits-denial decision. MM Solutions reviewed the medical records, including Dr. Perkins's independent medical evaluation, and agreed that "the claimant does not continue to meet the qualifications for continuation of benefits for Long Term Disability." MM Solutions disagreed with Dr. Rodriguez's

finding that Heron should work for no more than four hours per day and found that he was capable of full-time sedentary work. (Docket Entry No. 23-1 at 16–28).

After reviewing MM Solutions's initial report, ExxonMobil followed up with additional questions about how much time each day Heron could work and any restrictions he should follow. MM Solutions responded that Heron "can work for eight hours per day," although he can only "sit for one hour at a time." ExxonMobil then asked MM Solutions to clarify the amount of time Heron could sit and what breaks would be required. MM Solutions responded that Heron could "sit one hour at a time for a total of eight hours. . . [with] a break of two minutes for every one hour of sitting." (Docket Entry No. 23-1 at 25–28). Heron's appeal was denied in July 2015, exhausting his administrative remedies. (Docket Entry No. 23-1 at 2–3).

In January 2015, the Social Security Administration found that Heron had been disabled since October 1, 2012, and awarded him benefits. The standard for disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." The Social Security Administration considered Heron's description of his condition, a medical expert's review of Heron's records, and the opinions of two of Heron's treating physicians in finding that Heron's description of his condition matched that of his treating physicians and showed a significantly reduced ability to work. The Social Security Administration found that "the demands of the claimant's past relevant work exceed the significantly reduced sedentary residual functional capacity assessed herein," and that, given these restrictions, he would be unable to find a job appropriate for his skill level. (Docket Entry No. 23-3 at 446–452).

This lawsuit followed. The court analyzes the summary judgment motion based on the

6

administrative record, the parties' briefs, and the applicable legal standards.

## II.     The Legal Standards

### A.     The Summary Judgment Motion

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' " *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it need not negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v.*

7

*$92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.' " *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

### B. The Review of a Benefits Denial Under ERISA

An ERISA beneficiary may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B). A district court reviews the plan administrator's decisions *de novo*, unless a different standard is provided in the plan documents. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). If plan documents expressly give the plan administrator the authority to determine benefits and construe the plan terms, as the ExxonMobil Disability Plan does,[1] the standard of review is abuse of discretion. *See*

---

[1] ExxonMobil, the Administrator-Benefits, is "vested with full and final discretionary authority to determine eligibility for benefits, to construe and interpret the terms of the core benefit plans in their

8

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).

"A plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland v. Int'l Paper Co. Retirement Plan,* 576 F.3d 240, 246 (5th Cir. 2009) (internal quotation marks and citations omitted). As long as a plan administrator's decision is "not arbitrary or capricious" and is "supported by substantial evidence," it will prevail. *Singletary v. United Parcel Service, Inc.*, 828 F.3d 342, 347 (5th Cir. 2016) (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007)). The plan administrator's "'decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Holland,* 576 F.3d at 246–247 (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.,* 168 F.3d 211, 215 (5th Cir. 1999)). "Substantial evidence is more than a scintilla, less than a preponderance[;] . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson v. Cytec Indus., Inc.,* 619 F.3d 505, 512 (5th Cir. 2010) (citations omitted). Under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Singletary* 828 F.3d at 347 (quoting *Corry v. Liberty Life Assurance Co. of Boston,* 499 F.3d 389, 398 (5th Cir. 2007)).

**III. Analysis**

Heron argues for *de novo* review based on provisions in the Texas Insurance Code that prohibit discretionary-review clauses in plan documents or because ExxonMobil is both the source of funds for and the administrator of the Plan. (Docket Entry No. 1 at ¶¶ 13, 16–20).

---

application to any participant or beneficiary, and to decide any and all appeals relating to claims by participants or other beneficiaries." (§ 2.1(B)(1), Docket Entry No. 23-1 at 122–123).

9

Heron notes that the Texas Administrative Code prohibits "inclusion of a discretionary clause in any form to which this subchapter applies." 28 TEX. ADMIN. CODE § 3.1203. A discretionary clause "specifies that the insurer's or health maintenance organization's interpretation of the terms of a form or its decision to deny coverage or the amount of benefits is binding upon a policyholder or other claimant." 28 TEX. ADMIN. CODE § 3.1202(3). This prohibition applies only to forms "filed under the Insurance Code Chapters 1701 or 1271," which do not include ERISA plans. 28 TEX. ADMIN. CODE § 3.1201(a). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). An exception applies for state laws regulating insurance, but because the Plan is employer-funded, it does not qualify as insurance, *see* 29 U.S.C. § 1144(b)(2)(A); (Docket Entry No. 23-1 at 187), and "self-funded ERISA plans" are exempt "from state laws that 'regulat[e] insurance.'" *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990); *see also Curtis v. Metropolitan Life Ins. Company*, 2016 WL 2346739 (N.D. Tex. 2016). The Texas statutory prohibition against a discretionary-review clause in plan documents does not apply.

Heron is correct that "[a] third-party insurer's dual role as a claims administrator and plan funder gives rise to a conflict of interest that is pertinent in reviewing claims decisions." *Glenn*, 554 U.S. at 119 (Roberts, C.J., concurring). An ERISA plaintiff asserting a conflict of interest must come forward with evidence of the existence and extent of the conflict. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011). While LINA performs much of the claim review, ExxonMobil has the final say on benefits denials in its role as Administrator-Benefits. The Plan is "funded through employer contributions," giving ExxonMobil an interest in keeping Plan expenses low. (Docket Entry No. 23-1 at 187). When a plan administrator has a conflict of interest, a court

considers the conflict as a factor in abuse-of-discretion review.[2] *Glenn* 554 U.S. at 115. The issue is the extent of the conflict.

The Supreme Court has explained that conflict-of-interest evidence will "prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." *Id.* at 117. "Circumstances suggesting a higher likelihood that a plan administrator's conflict of interest affected [its] decision [also] exist . . . where the circumstances surrounding the determination suggest procedural unreasonableness." *Hagen v. Aetna Ins. Co.*, 808 F.3d 1022, 1027 (5th Cir.2015). By contrast, a conflict of interest "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Glenn*, 554 U.S. at 117. "Quite simply, 'conflicts are but one factor among many that a reviewing judge must take into account.'" *Holland*, 576 F.3d at 247–48 (quoting *Glenn*, 554 U.S. at 116).

"Failure to address a contrary [Social Security Administration] award can suggest 'procedural unreasonableness' in a plan administrator's decision." *Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 471 (5th Cir. 2010). A finding of procedural unreasonableness can lead a court to "give more weight to the conflict of interest." *Id.* at 469. While a plan administrator is

---

[2] The Supreme Court makes clear that a conflict of interest can be "weighed as a factor in determining whether there is an abuse of discretion." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)) (internal quotation marks omitted). But this does not imply "a change in the *standard* of review, say, from deferential to *de novo* review." *Metropolitan Life Ins. Co.* at 115 (emphasis in original). Even if Heron were to prevail on his conflict-of-interest argument, the denial of benefits under the Plan is not reviewed *de novo*.

"not require[d] . . . to give any particular weight to the contrary findings" of the Social Security Administration, the plan administrator must at least acknowledge the award and conclude that "the evidence supporting denial was more credible." *Id.* at 471.

LINA acknowledged that Heron had received Social Security benefits in its letter denying his initial appeal. LINA noted that "the criteria used by the Social Security Administration . . . may differ from the requirements of the policy under which you are covered. We have confirmed that there is no new information in your SSA file." ( Docket Entry No. 23-1 at 32). Under *Schexnayder*, the acknowledgment of the Social Security benefits and confirmation that no new information was provided responds to Heron's accusation of procedural unreasonableness.

ExxonMobil's dual role as Plan funder and benefits administrator make a structural conflict of interest possible. But in light of substantial record evidence supporting ExxonMobil's decision, its reliance on multiple independent reviewers and the substantial record evidence showing that Heron was not incapacitated from all work means that the possibility is entitled to little weight.

The record shows that ExxonMobil carefully reviewed Heron's medical records and other notes from his treating doctors and came to the conclusion that Heron was not incapacitated within the meaning of the Plan after the initial two-year disability benefit period. To qualify for long-term disability benefits after the initial period, Heron must be "wholly and continuously unable, by reason of a physical or mental health impairment, to perform any work for compensation or profit for which the person is or may become reasonably fitted by education, training or experience." (§5.13(B), Docket Entry No. 23-1 at 92). Reports from nearly all of the physicians in the record, both Heron's own treating physicians and those retained by ExxonMobil, indicate that Heron was capable of at least part-time work and possibly full-time work, with certain restrictions and accommodations.

Heron stopped work at ExxonMobil in September 2012. He received disability benefits from

that date until September 2014. In early 2013, Heron's physician, Dr. Rodriguez, and ExxonMobil's physician, Dr. George, recommended him for medical retirement because of his pancreatitis and diabetes. (Docket Entry No. 23-4 at 657–59).

In its benefits-continuation review at the end of the two-year period, LINA reviewed forms completed by three different doctors whom Heron indicated he was seeing for treatment. LINA also reviewed Heron's medical records. LINA did not dispute that Heron had several "medical conditions, but the medical evidence received [did] not support that [he was] unable to perform the duties of any occupation." (Docket Entry No. 23-1 at 64). LINA engaged a vocational specialist to perform a Transferable Skills Analysis. Taking into account Heron's "education, training and experience" and considering only "sedentary occupations [that] fall within the capacities and limitations provided by Dr. Rodriguez," Heron's diabetes doctor, the vocational specialist found at least two positions that Heron would be able to and was reasonably fitted to perform. (Docket Entry No. 23-1 at 63). The medical records or reports did not state or show that Heron was unable to work. Many of the records and reports state that he could work half-days with workplace restrictions, but none state that he is unable to do "any work" for which he was reasonably fitted.

LINA engaged a third party to complete an in-person independent medical exam as part of its review on appeal. Dr. Perkins reviewed Heron's medical records and test results and did a physical examination. He found Heron to be a "pleasant, well developed, well nourished, black male who is alert, oriented, and in no acute physical distress . . . He ambulates, moves about and uses the extremities spontaneously and freely." Noting that Heron's "last attack of pancreatitis was in 2011 or 2012," Dr. Perkins agreed with Heron's other physicians that "work activity restrictions are medically necessary." He suggested that Heron "be restricted from performing heavy strenuous activities . . . [and] safety-sensitive activities . . . such as working at heights, operating dangerous

13

equipment and activities requiring balance." The Transferable Skills Analysis suggested sedentary positions, well within these restrictions. On the Physical Ability Assessment form, Dr. Perkins indicated that Heron was capable of sitting for 5.5 or more hours per day, and he was capable of sitting or walking for 2.5 to 5.5 hours per day. (Docket Entry No. 23-1 at 40–52). LINA denied Heron's first appeal on March 6, 2015, finding that "an explanation of your functionality and how your functional capacity continuously prevented you from performing the essential duties of any occupation from September 29, 2014 through the present was not clinically supported." (Docket Entry 23-1 at 30–33).

Heron provided no new medical information to ExxonMobil in his second appeal, other than what was contained within the response to medical interrogatories. In response to this appeal, ExxonMobil had a third party, MM Solutions, perform an additional independent medical review of the information Heron submitted to LINA and ExxonMobil. This was the fourth review of Heron's records. After receiving the initial report from MM Solutions, ExxonMobil twice asked for additional clarification on Heron's work capability. ExxonMobil concluded that "the medical documentation does not support a conclusion that you are unable to perform any and all jobs . . . your restrictions allow for sedentary and light-duty jobs." (Docket Entry No. 23-1 at 2–3).

A court overturns the denial of ERISA benefits under the abuse of discretion standard if the denial was "not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Holland*, 576 F.3d at 246 (quoting *Lain v. UNUM Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002)). The decision may not be arbitrary or capricious and must be supported by substantial evidence. *Holland*, 576 F.3d at 246. In conducting the review, the court's analysis "need not be particularly complex or technical," but it must ensure that a decision falls within "a continuum of reasonableness—even if on the low end." *Singletary*, 828 F.3d at 347 (quoting *Corry v. Liberty Life*

14

*Assurance Co. of Boston*, 499 F.3d 389, 397 (5th Cir. 2007)).  ExxonMobil had ample record evidence that Heron was not incapacitated from any work within the Plan meaning.  Absent procedural irregularities, and given ExxonMobil's use of multiple independent reviewers and the substantial evidence showing that Heron was capable of part-time, sedentary work, ExxonMobil did not abuse its discretion in denying Heron long-term disability benefits.

**IV.     Conclusion**

The Plan's motion for summary judgment is granted. Final judgment is separately entered.

SIGNED on July 28, 2017, at Houston, Texas.

*[signature]*
Lee H. Rosenthal
Chief United States District Judge